

Rec # 15000900S

32

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

Plaintiff,

v.

**RATAN LAL BAID,**
an individual,

**VIVEK BAID,**
an individual,

and together doing business as
**ELD MANDATE,**

Defendants.

Case:2:24-cv-10297
Judge: Steeh, George Caram
MJ: Grand, David R.
Filed: 02-05-2024 At 02:00 PM
CMP DOBRONSKI V BAID, ET AL

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### **Parties**

2.  Plaintiff, MARK W. DOBRONSKI, is an individual, of the age of majority,

a citizen of the United States of America, is domiciled and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3.   Defendant RATAN LAL BAID ("Ratan"), is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 2323 Irvine Avenue, Suite 100, Newport Beach, California 92660-3410.

4.   Defendant VIVEK BAID ("Vivek"), is an individual, of the age of majority, is mentally competent, is not in the military service, and resides at 2335 Irvine Avenue, Newport Beach, California 92660-3410.

5.   Upon information and belief, Ratan and Vivek are believed to be brothers.

6.   Ratan and Vivek are the owners of a partnership entity and together they transact business under the fictitious business name of ELD MANDATE.

7.   Vivek holds himself out as the President of ELD Mandate.

8.   Ratan holds himself out as the General Manager of ELD Mandate.

## Jurisdiction

9.   This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

10.   This Court has limited personal jurisdiction over Defendants Ratan and Vivek and their partnership entity, pursuant to M.C.L. § 600.705, as a result of the

defendants transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

### Venue

11.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received by Plaintiff in this judicial district, to wit, the Eastern District of Michigan..

### Preliminary Statement

12.  As the Supreme Court recently explained, "Americans passionately disagree amount many things.  But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

13.  The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

14.  In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

15.  According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

16.   In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year.  It is telephone terrorism, and it has got to stop...." See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

17.   According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2023 alone, American consumers were bombarded with over 55.048 billion robocalls; an average of over 167 robocalls to each man, woman, and child. [Source: www.robocallindex.com].

18.  Nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html].

19.   Congress has found that interstate telemarketing fraud has become a

4

problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

20. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

## Telephone Consumer Protection Act

21. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

22. The TCPA imposes restrictions on the use of automated telephone equipment. 47 U.S.C. § 227(b)(1).

23. Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. 64.1200(a), *et seq*.

24. As part of the restrictions on use of automated telephone equipment,

Congress created a private right of action for aggrieved persons to received $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

25. Additionally, the Congress also sought to protect subscriber privacy rights, and directed the FCC to initiate a rulemaking proceeding to compare and evaluate alternative methods and procedures, and to develop proposed regulations to implement the methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 C.F.R. § 227(c)(1). The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 68 FR 44144, 2003 WL 21713245 (July 25, 2003). The regulations implemented by the FCC are promulgated at 47 C.F.R. § 64.1200(c), *et seq.*, 47 C.F.R. § 64.1200(d), *et seq.*, and 47 C.F.R. § 64.1601(e).

26. As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500.00 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder,

which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

27. The FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, 14039, ¶ 36 (2003).

## Michigan Home Solicitation Sales Act

28. The Michigan Legislature has also enacted statutes governing and restricting telephone solicitors from making or causing to be made a telephone solicitation to a residential telephone subscriber. The restrictions include a prohibition that a telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal do-not-call list. M.C.L. § 445.111a(5). At the beginning of a telephone solicitation, a person making a telephone solicitation to a residential telephone subscriber shall state her or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request. M.C.L. § 445.111b(1). Further, telephone solicitors may not make a telephone solicitation to

7

a consumer in this state who has requested that he or she not receive calls form the organization or other person on whose behalf the solicitation is made. M.C.L. § 445.111c(1)(g).

29.   The MHSSA provides that a person who suffers a loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees.  M.C.L. § 445.111c(3).

### General Allegations

30.  Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.   Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

31.  Plaintiff's residential telephone number is 734-***-2323.

32.  Plaintiff's residential telephone number 734-***-2323 is listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and has been so listed continuously since

at least June 1, 2004 and at all times subsequent thereto and relevant hereto.

33. Plaintiff's residential telephone number 734-***-2323 is a telephone line for which the called party, namely the Plaintiff, is charged for the call on both a per call and per minute basis.

34. By listing his residential telephone number 734-***-2323 on the National Do Not Call Registry, Plaintiff has given constructive notice to the World, including the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential telephone number.

35. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

36. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26 ¶ 73 (FCC July 10, 2015).

37. Plaintiff is the subscriber to and a customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff

has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

38.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendants.

39.  At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone.

40.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

41.  At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

42.  At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with any of the Defendants.

10

43. The FCC has declared that "[p]urporting to obtain consent during the call...
does not constitute the *prior* consent necessary to deliver the message in the first
place as the request... is part of the telemarketing." See *In re Rules and Regulations
Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶
142 (June 26, 2003) [Emphasis as in original].

44. The FCC has clarified that sellers may be held vicariously liable for
violations of the TCPA by third-party telemarketers that initiate calls to market the
seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is
> made bears the responsibility for any violation of our
> telemarketing rules and calls placed by a third party on
> behalf of that company are treated as if the company itself
> placed the call."

*In re Rules and Regulations Implementing the TCPA*, 20 FCC Rcd. 13664, 13667, ¶
7 (2005).

45. A seller may be liable for violations by its representatives under a broad
range of agency principles, including not only formal agency, but also principles of
apparent authority and ratification. *In re Dish Network,* 28 FCC Rcd. 6574, 6584, ¶
28 (2013).

46. When considering individual corporate officer liability, other Courts have
agreed that a corporate officer involved in the telemarketing at issue may be

personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

47. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

48. Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words or may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each become subject to liability for the acts of the others, as well as for his

own acts. In either case, the defendant's embrace of the actor's purpose or design—whether by agreement or by action—renders the defendant liable for the underlying tort.

49. The liability of coconspirators to civil damages is joint and several. All those who, in pursuance of a common plan to commit a tortious act actively take part in it and further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or who ratify and adopt the acts done for their benefit, are equally liable with him.

50. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

51. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendants' calls.

52. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call

notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

53. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

54. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## The Scheme

55. Defendants are engaged in marketing an electronic logging device system and related services to truckers.

56. Defendants utilizes telemarketing as a cost efficient method of seeking out out consumers for Defendants' product offerings and services.

57. Defendants either directly, or through contracted third-party telemarketers. initiate telephone calls *en masse* using automated telephone dialing systems, which have the capacity to store or produce telephone numbers to be called using a random

or sequential number generator to dial such numbers, to solicit consumers to purchase Defendants' products or services.

58. Once a consumer has been reached and is pre-qualified as being a potential user of Defendant's product offerings or services, the automated telephone dialing system will randomly selected pre-qualified numbers and re-dial them at random intervals so that Defendants' telemarketers may continue soliciting the called party to purchase Defendants' products or services until such time as the called party does actually purchase same.

59. The automated telephone dialing system saves Defendant time and expense and provides efficiencies to the Defendant by only tieing up Defendant's telemarketing personnel with actual called persons who have answered the call.

60. Defendants Vivek and Ratan personally authorized, directed, had control over, materially participated in, and ratified the telephone solicitation activities by accepting the profits of the sakes of the products and services which sold as a result of the telemarketing calling practices.

61. As discovery progresses in this case and Plaintiff is able to learn the true identity or identities of the third-party telemarketers centers that Defendant has utilized to initiate the telephone solicitations, Plaintiff will seek to amend this complaint to add the third-party telemarketers as additional named defendants.

62.  Also as discovery progresses in this case, Plaintiff anticipates learning of additional telephone solicitation calls for which Defendant or Defendant's third-party telemarketers are responsible, at which time Plaintiff will seek to amend this complaint to supplement the damages claims.

## Call 1

63.  On December 15, 2023, at approximately 3:27 P.M., Defendants or Defendants' third-party agent initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2323.

64.  The caller identification number displayed was 949-649-9369 with no caller identification name information.

65.  Upon answering the telephone line by saying "hello", Plaintiff heard a "click" sound and then noted a 5 second delay, then heard a live telemarketer come onto the line and identify himself by his name (unintelligible) and that he was with ELD Mandate.

66.  The "click" sound and delay after answering is characteristic of an automated telephone dialing system.

67.  The telemarketer inquired if Plaintiff had an an electronic logging device for his truck.  Plaintiff responded that he had no truck.

68.  Plaintiff further made demand to the telemarketer to be provided a a copy

of their written policy for maintaining a do-not-call list. The telemarketer responded with "what is that?".

69.  Plaintiff made demand to the telemarketer to place Plaintiff's telephone number on their do-not-call list, at which the telemarketer did not verbally respond and abruptly hung up.

## Calls 2-5

70. On each of the following dates and times, Defendants or Defendants' third-party agent initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2323:

| Call | Date | Time |
|------|------|------|
| 2 | 12/23/2023 | 2:11 P.M. |
| 3 | 01/02/2024 | 4:30 P.M. |
| 4 | 01/09/2024 | 6:04 P.M. |
| 5 | 01/18/2024 | 12:35 P.M. |

71.  The caller identification number display for each call was 949-649-6369 with no caller identification name information.

72.  Upon answering each call by saying "hello", Plaintiff would hear a "click" sound and then the line would be silent for 5 to 10 seconds and then disconnect.

73.  The "click" sound and delay followed by the call disconnected is characteristic of an automated telephone dialing system and a lack of available telemarketing agents to accept the call and engage the called party.

17

74. The fact that the caller identification number information displayed in each call was the same caller identification number displayed in Call 1, *supra*, is evidence that the same callers are responsible for each of the calls.

### Call 6

75.   On January 25, 2024, at approximately 5:19 P.M., Defendants or Defendants' third-party agent agent initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-2323.

76.   The caller identification number displayed was 949-649-9369 with no caller identification name information.

77.   Upon answering the telephone line by saying "hello", Plaintiff heard a "click" sound, then noted a 5 to 6 second delay, then heard a live telemarketer come onto the line and identify herself by her name (unintelligible) and that she was with ELD Mandate.

78.   The telemarketer inquired if Plaintiff had an electronic logging device for his truck.

79.   Solely in order to better identify the caller, Plaintiff feigned interest and responded that he had a truck.

80.   The female telemarketer then asked Plaintiff some pre-qualifying questions and then transferred the call to a male telemarketer.

81. The male telemarketer that came on the line identified himself as Quentin. Quentin attempted to sell Plaintiff an electronic logging device for several trucks which Plaintiff purported to have.

82. Plaintiff engaged in an investigative technique known as a "canary trap" and provided false, but unique controlled information to Quentin, including a false name of Charles Madison, a controlled address, and a controlled credit card number.

83. The purpose behind a canary trap is to facilitate identifying the source of information if and when the unique controlled information should subsequently reappear.

84. Quentin then reported that he had attempted to process Plaintiff's credit card number but that the transaction had been declined.

85. Plaintiff made demand to Quentin to be provided with a copy of their written policy for maintaining a do-not-call list, to which Quentin responded that he could not provide one.

86. Plaintiff made demand to Quentin that Plaintiff's telephone number be placed upon their internal do-not-call list; the call terminated.

87. Shortly after the telephone call terminated, Plaintiff was notified by his financial institution that a merchant by the name of ELD Mandate had made two attempts to charge Plaintiff's credit card account, the first attempt at 5:36 P.M. and

the second at 5:38 P.M.

## Call 7

88.  On January 26, 2024, at approximately 11:01 A.M., Defendants or Defendants' third-party agent initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-2323.

89.  The caller identification number displayed was 949-649-9369 with no caller identification name information.

90.  Upon answering the call by saying "hello", Plaintiff heard a "click" sound, and then the line went silent for 5 to 10 seconds and then disconnected.

## Call 8

91.  On January 26, 2024, at approximately 11:07 A.M., Defendants or Defendants' third-party agent initiated a telephone solicitation call to Plaintiff residential telephone number 734-***-2323.

92.  The caller identification number displayed was 951-550-3907 with no caller identification name information.

93. Upon answering the call by saying "hello", Plaintiff heard a "click" sound, then noted a 5 to 6 second period of silence, then heard a live telemarketer come onto the line and identify himself as Zack Quentin with ELD Mandate.  This appeared to be the same "Quentin" that Plaintiff had spoken to during the course of Call 6, *supra*.

94. Quentin again attempted to sell Plaintiff an electronic logging device.

95. Plaintiff again made demand to Quentin that Plaintiff be provided a copy of their written do not call policy. Quentin responded that he would do so only after Plaintiff placed an order for an electronic logging device. The call terminated.

**Calls 9-23**

96. On each of the following dates and times, Defendant or Defendant's third-party agent initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-2323 and displaying the caller identification number shown respective to each:

| Call | Date | Time | Caller ID No. |
|------|------|------|---------------|
| 9 | 01/26/2024 | 11:01 A.M. | 949-649-6369 |
| 10 | 01/26/2024 | 12:20 P.M. | 951-550-3907 |
| 11 | 01/26/2024 | 1:33 P.M. | 951-550-3907 |
| 12 | 01/26/2024 | 1:50 P.M. | 949-649-6369 |
| 13 | 01/26/2024 | 2:20 P.M. | 949-649-6369 |
| 14 | 01/26/2024 | 2:52 P.M. | 949-649-6369 |
| 15 | 01/26/2024 | 5:21 P.M. | 949-649-6369 |
| 16 | 01/26/2024 | 7:15 P.M. | 951-550-3907 |
| 17 | 01/26/2024 | 7:54 P.M. | 949-649-6369 |
| 18 | 01/29/2024 | 11:03 A.M. | 949-649-6369 |
| 19 | 01/29/2024 | 11:14 A.M. | 951-550-3907 |
| 20 | 01/29/2024 | 11:15 A.M. | 949-649-6369 |
| 21 | 01/29/2024 | 11:47 A.M. | 949-649-6369 |
| 22 | 01/29/2024 | 3:57 P.M. | 949-649-6369 |
| 23 | 01/30/2024 | 2:36 P.M | 949-649-6369 |

97. No caller identification name information was displayed for any of the calls.

98. Upon answering each call by saying "hello", Plaintiff would hear a "click", and then the line would be silent for 5 to 10 seconds and then disconnect.

99. The fact that the caller identification number information displayed in each call were the same caller identification numbers as displayed in Calls 1, 6, and 8, *supra*, and Calls 24 and 26, *infra*, is evidence that the same callers are responsible for initiating each of the calls.

## Call 24

100. On February 1, 2024, at approximately 11:56 A.M., Defendant or Defendant's third-party agent initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-2323.

101. The caller identification number displayed was 949-649-9369.

102. Upon answering the telephone line by saying "hello", Plaintiff noted a 5 to 6 second delay, then heard a "click", then heard a live telemarketer come onto the line and identify herself by her name (unintelligible) and that she was with ELD Mandate.

103. The telemarketer asked to speak with Charles Madison.

104. The telemarketer then transferred the call to a male telemarketer who identified himself as "Quentin."

105. Plaintiff again made a demand to Quentin to be placed upon their internal

do-not-call list.

## Call 25

106. On February 2, 2024, at approximately 2:21 P.M., Defendant or Defendant's third-party agent initiated a telephone solicitation call to Plaintiff's residential telephone number 734-***-2323.

107. The caller identification number displayed was 949-649-9369 with no caller identification name information.

108. Upon answering the call by saying "hello", Plaintiff heard a "click" sound, and then the line went silent for 5 to10 seconds and then disconnected.

109. The fact that the caller identification number information displayed in this call was the same caller identification number as displayed in Calls 1, 6, and 24, *supra*, is evidence that the same callers are responsible for initiating each of the calls.

## Call 26

110. On February 2, 2024, at approximately 2:21 P.M., within seconds of Call 25 disconnecting, Defendant or Defendant's third-party agent initiated a telephone solicitation call to Plaintiff residential telephone number 734-***-2323.

111. The caller identification number displayed was 951-550-3907 with no caller identification name information.

112. Upon answering the call by saying "hello", Plaintiff heard a "click"

23

sound, noted a 5 to 6 second period of silence, then heard a live female telemarketer come onto the line and identify herself as (unintelligible) with ELD Mandate.

113.  The telemarketer first asked if Plaintiff had any trucks.

114.  Plaintiff responded "no".

115.  The telemarketer then asked "Is this Mr. Madison"? and then said "hold on one moment."

116.  The call was then transferred to a male telemarketer who identified himself as "Quentin".

117.  Plaintiff again made demand to Quentin to be placed upon their internal do-not-call list.

118.  Quentin stated that he had talked to his manager and that they were prepared to offer Plaintiff a better deal.

119.  Plaintiff confronted Quentin by asking whether Plaintiff had, just the day before, made a demand to be placed on their do-not-call list; to which Quentin responded "yes" and then hung up.

## Subsequent Investigation

120.  Subsequent investigation has disclosed that both Ratan and Vivek are no strangers to unlawful telemarketing practices.

121. In 2013, the U.S. Federal Trade Commission sought and obtained a permanent injunction and judgments against Ratan and 23 other co-defendants who

24

had allegedly engaged in a phony mortgage relief scheme which was marketed through online ads and telemarketing calls. *See U.S. Federal Trade Commission v. A to Z Marketing, Inc., et al.*, Case No. 8-13-cv-00919 (C.D. Cal.).

122.   Subsequently, the Baid brothers, Ratan and Vivek, were haled into court as co-defendants in a class action lawsuit alleging uninvited telemarketing calls in violation of the TCPA. *See Edward Makaron v. Getvisible.com, et al.*, Case No. 2:16-cv-06814 (C.D. Cal.).

123.   Apparently old bad habits are hard to break, as the Baid brothers' current business enterprise, ELD Mandate, is the subject of consumer complaints being made to the Better Business Bureau regarding their illegal telemarketing practices.   An example of one such complaint which is posted on the BBB's web page regarding ELD Mandate reads:

**Initial Complaint**
04.04.2023

**Complaint Type:** Problems with Product/Service
**Status:** Answered ●

We are trucking company based out of ˄˄˄˄˄˄˄˄˄˄˄˄ and for the past 2 years this company has been calling us thousands of times and when we say thousands of time we mean it. We have blocked couple hundred numbers belonging to them and told them we are not interested in their services. They offer ELD for trucking company and even if they were the last company on earth we wouldnt do business with them. We are tired of there none stop harassment. If you tell them to remove you from their list they either talk over you or just cuss you out completely. They are worse than collection company and face no repercussions for their action based on them being in Indian. We are asking BBB to put stop to this none sense and take action against these spammers.

[https://www.bbb.org/us/ca/newport-beach/profile/marketing-software/bizringer-inc-1126-172019472].

## COUNT I
## VIOLATION OF THE TCPA - AUTODIALER CALL

124. Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

125.  Each of Calls 1 through 26, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. 64.1200(a)(1)(iii), as Defendants or Defendants' agent initiated a telephone call to a telephone line for which the called party is charged for the call using an automatic telephone dialing system without the prior express consent of the called party and there being no emergency.

126.  The aforesaid violations of the TCPA were willful and/or knowing as is evidenced by repetitive number of calls and the several do-not-call demands made by Plaintiff.

## COUNT II
## VIOLATION OF THE TCPA - DO NOT CALL

127. Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

128.  Each of Calls 1 through 26, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber whose telephone number is listed on the National Do Not Call Registry of persons who do not wish to receive telephone solicitations.

129.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls and the several unheeded do-not-call

demands made by Plaintiff.

## COUNT III
## VIOLATION OF THE TCPA - FAIL TO HONOR DNC DEMAND

130.  Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

131.  Each of Calls 2 through 26 *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(6), as Defendants or Defendants' agent entity making the call for telemarketing purposes failed to honor Plaintiff's express request not to receive further telemarketing calls.

132.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT IV
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY
## OR PROVIDE OPT OUT CAPABILITY

133.  Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

134.  Each of Calls 2 through 5, 7, 9 through 23, and 25, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(i), as Defendants or Defendants' agent failed to, when a live sales representative was not available to speak with the called person, provide a prerecorded identification and opt-out message including an automated, interactive remote and/or key press-activated opt-out mechanism.

135.  The aforesaid violations of the TCPA were wilful and/or knowing as is

evidenced by the repeated number of calls.

## COUNT V
## VIOLATION OF THE TCPA - FAILURE TO PROVIDE POLICY

136.  Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

137.  Each of Calls 1 through 26, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendants failed to have a written policy, available upon demand, for maintaining a do-not-call list.

138.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repetitive unheeded demands made by Plaintiff for a copy of the written policy.

## COUNT VI
## VIOLATION OF THE MHSSA

139.  Plaintiff incorporates the allegations of paragraphs 1 through 123, *supra*.

140.  Each of Calls 1 through 26, *supra*, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendant or Defendant's agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. 445.111b(1), as the person making the telephone solicitation did not state his or her name and the full name of the organization or other person on whose behalf the call was initiated; and/or M.C.L. 445.111c(1)(g), as the telephone solicitor made a

28

telephone solicitation to a consumer in this state who has requested that he or she not

receive calls from the organization or other person on whose behalf the telephone

solicitation is made.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this

Court enter a judgment for Plaintiff and against the Defendants, jointly and severally,

as follows:

A.    Damages:

I.    Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 26         |
| II    | 26         |
| III   | 25         |
| IV    | 21         |
| V     | 26         |

A total of 124 violations at $500 per violation

for damages of $62,000.00, which amount

shall be trebled because the violations were

willful and/or knowing, for total damages of

$186,000.00.

ii.   Damages for violations of the MHSSA

alleged at Count VII: 26 violations at $250.00

per violation, for damages of $6,500.00.

The cumulative total amount of damages claimed in this action is $192,500.00, and in the event of default judgment is the sum certain damages amount that will be sought.

      B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

      C.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's residential telephone lines;

      D.  Interest accruing from the date of filing until paid at the statutory rate; and,

      E.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 5, 2024

_____
Mark W. Dobronski
Post Office Box 222
Dexter, Michigan 48130-0222
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

30

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Mark W. Dobronski

## DEFENDANTS

Ratan Lal Baid and Vivek Baid d/b/a ELD Mandate

**(b)** County of Residence of First Listed Plaintiff   Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Orange, CA
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

PRO SE

(734) 330-9671

Case: 2:24-cv-10297
Judge: Steeh, George Caram
MJ: Grand, David R.
Filed: 02-05-2024 At 02:00 PM
CMP DOBRONSKI V BAID, ET AL

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | **PERSONAL INJURY** | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☒ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) |
| | | | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 891 Agricultural Acts |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 893 Environmental Matters |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | **FEDERAL TAX SUITS** |
| | | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 448 Education | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 |
| | | ☐ 555 Prison Condition | | ☐ 895 Freedom of Information Act |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 896 Arbitration |
| | | | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| | | | | ☐ 950 Constitutionality of State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227

Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
192,500.00

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
February 5, 2024

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?

  ☐ Yes
  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

  ☐ Yes
  ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :