## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

Case No.  **24-cv-10297**

               Plaintiff,

Honorable George Caram Steeh
United States District Judge

v.

Honorable David R. Grand
United States Magistrate Judge

**RATAN LAL BAID** and
**VIVEK BAID**
d/b/a **ELD MANDATE**,

               Defendants.

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT
## <u>PURSUANT TO FEDERAL RULE 12(B)(6)</u>

Plaintiff MARK W. DOBRONSKI, appearing *in propria persona*, hereby responds in opposition to Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) [ECF No. 15] ("Motion").

As a preliminary matter, Defendants failed to comply with the requirements of Local Rule 7.1(a) to seek concurrence in the relief being sought in the Motion. Additionally, Defendants – obviously in an attempt to prevent Plaintiff the opportunity to object or respond, and in blatant violation of Plaintiff's due process rights – failed to serve a copy of the Motion upon Plaintiff.

1

Defendants proffer a number of flawed arguments as to why Plaintiff's Complaint should be dismissed.

For the foregoing reasons, and as further explained in the attached brief, Defendants' Motion should be **denied**.

Respectfully submitted,

Dated: May 1, 2024

_____

Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**MARK W. DOBRONSKI**,

       Plaintiff,

v.

**RATAN LAL BAID** and
**VIVEK BAID**
d/b/a **ELD MANDATE**,

       Defendants.

Case No. **24-cv-10297**

Honorable George Caram Steeh
United States District Judge

Honorable David R. Grand
United States Magistrate Judge

_____

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT <u>PURSUANT TO FEDERAL RULE 12(B)(6)</u>

## <u>CONCISE STATEMENT OF THE ISSUES PRESENTED</u>

1.   Whether Defendants' motion should be denied as a result of Defendants' failure to comply with Fed. R. Civ. P. 5(a)(1)(D) which requires that a movant must serve a copy of any motion upon the opposing party.

2.   Whether Defendants complied with Local Rule 7.1(a) which requires seeking concurrence from the opposing party as to the relief being sought by motion.

3.   Whether Plaintiff has pleaded plausible facts demonstrating that either of the named Defendants are directly or vicariously liable for any alleged calls in violation of the TCPA.

4.   Whether Count I plausible alleges Dobronski was charged for the calls he received or that Defendants called a wireless telephone line.

5.   Whether Counts II and VI plausibly allege that calls were made to a residential telephone number.

6.   Whether Counts III and V plausibly allege that calls were made to a residential telephone number or that calls were made without implementing proper procedures.

7.   Whether Count VI asserts a claim for which a private right of action exists.

**<u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>**

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009)

*Bey v. Ally Bank*, Civ. Action. No. 1:21-01079, 2021 WL 4891602, at *1–2 (W.D. Tenn. Sept. 28, 2021)

*Charvat v. NMP, LLC*, 656 F.3d 440, 444 (6th Cir. 2011)

*Dobronski v. Family First Life, LLC, et al.*,  2024 WL 1342668 (E.D. Mich. Mar. 29, 2024)

*Dobronski v. Selectquote Insurance Services*, 462 F.Supp.3d 784, 790 (E.D.Mich., 2020)

*Leyse v. Bank of America*, 2016 WL 5928683, at *5 (D.NJ 2016)

*McIntyre v. Kavanaugh*, 242 U.S. 138, 139, 37 S.Ct. 38, 61 L.Ed. 205 (1916)

*Perrong v. Victory Phones LLC*, 2021 WL 3007258, at *7 (E.D.Pa., 2021)

*Schweitzer v. Direct Energy, L.P.*, 2021 WL 5298989, at *2 (E.D. Pa. 2021)

*Tsolumba v. SelectQuote Insurance Services*, 2023 WL 6146644, at *4 (N.D.Ohio, 2023)

*U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009)

*In the Matter of Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 81 (FCC, July 10, 2015)

Fed. R. Civ. P. 5

Fed. R. Civ. P. 12(b)(6)

E.D. Mich. LR 7.1(a)

47 C.F.R. § 64.1200

## MEMORANDUM

## I.    BACKGROUND

### A.    Introduction

Plaintiff commenced this case on February 5, 2024 by the filing of the Complaint. [ECF No. 1].    This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq*. [ECF No. 1, PageID.1, ¶ 1].

### B.    Factual Background

In the Complaint, Plaintiff details a series of 26 telemarketing calls which were initiated by Defendants' agents to Plaintiff's residential telephone number. Plaintiff's residential telephone number is listed on the National Do Not Call Registry. [ECF No. 1, PageID.8-9, ¶ 32].  At no time has Plaintiff provided permission to the Defendants to engage in telephone solicitation with the Plaintiff via telephone. [ECF No. 1, PageID.10, ¶ 39].  At no time has Plaintiff had an established business relationship with any of the Defendants. [ECF No. 1, PageID.10, ¶ 42].  Even where Plaintiff made express "do not call" demands to Defendants' calling agents, the intrusive and unwelcome telemarketing calls continued. [ECF No. 1, PageID.16-17, ¶ 68; PageID.19, ¶ 8; PageID.21, ¶ 95; PageID.22-23, ¶ 105; PageID.24, ¶ 117].

Defendants criticize Plaintiff because Plaintiff "[i]n this District alone... has filed over 40 TCPA lawsuits." [ECF No. 15, PageID.65]. Defendants also criticize Plaintiff because Plaintiff utilizes a "canary trap" to identify telemarketers who have engaged in illegal telemarketing by calling Plaintiff in the first place when Plaintiff's telephone number is listed on the National Do Not Call Registry, the telemarketers have falsified their caller identification information and concealed their true identity despite the requirements under the law that they must transmit accurate caller identification name and number information and truthfully identify themselves to called parties. 47 C.F.R. § 64.1200(d)(4); 47 C.F.R. § 64.1601(e). Plaintiff, by listing his telephone number on the National Do Not Call Registry ("NDNCR"), has given notice to the World – including the Defendants – that Plaintiff does not wish to receive telephone solicitations or robocalls at his NDNCR- registered telephone number. [ECF No. 1, PageID.9, ¶ 34]. Yet, despite this quintessential fact, Defendants telephoned Plaintiff at least 26 times.

This Court should see through Defendants' attempts at victim blaming. The Federal Communications Commission ("FCC") has clearly declared that "the TCPA places no affirmative obligation on a called party to opt out of calls to which he or she never consented; the TCPA places responsibility on the caller alone to ensure that he or she has valid consent for each call made." *In the Matter of Rules and Regulations*

7

*Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 81 (FCC, July 10, 2015).

In enacting the TCPA, Congress was reacting to a deluge of "intrusive, nuisance calls ... from telemarketers" that rely on "automated technology ... to execute large-scale telemarketing campaigns at a fraction of the prior costs, dramatically increasing customer contacts." *Facebook, Inc. v. Duguid*, 141 S.Ct. 1163, 1167, 592 U.S. 395, 399 (2021).

FFL cannot cite any portion of the TCPA limiting the number of actions an aggrieved party may bring. The TCPA prohibits "any person" from making or initiating calls as proscribed therein. 47 U.S.C. § 227(b)(1). For "each such violation," a person may bring a private suit for an injunction, statutory damages, or both. 47 U.S.C. § 227(b)(3). The capacious language of the TCPA belies Defendants' arguments, suggesting instead that Congress did not limit how many actions an aggrieved individual may bring under the TCPA. In the related context of "a prolific filer of TCPA suits," courts have "rejected the argument that because prolific filers turn telephone solicitations into money makers, they are not harmed and thus cannot bring a TCPA suit," reasoning that "[t]hat a plaintiff has filed numerous TCPA claims does not alone divest that plaintiff of standing to sue" and where a plaintiff "alleges his phone number was on a 'Do Not Call' list and there is no indication that he ever

8

called Defendant," the "[p]laintiff's other TCPA suits do not block him from proceeding with the instant case." *Noviello v. Holloway Funding Group*, 2023 WL 2195768, at *2 (N.D.Tex., 2023).

Given that American consumers received over 55.048 *billion* robocalls during calendar year 2023 alone, the number of TCPA lawsuits which Plaintiff has filed is certainly far from unreasonable. [ECF No. 1, PageID.8, ¶ 30]. Over 1 in 3 Americans say they have fallen victim to a phone scam, with reported losses to phone scams exceeding $29.8 Billion. [ECF No. 99, PageID.1001, ¶ 31]. What is unreasonable is the fact that telemarketers – like the Defendants in this case – ignore the proscriptions of the TCPA and the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and inundate American households with these illegal telemarketing calls and their scams. Instead of just lying down and taking the abuse, Plaintiff devotes himself to engaging in the role of private attorney general and pursues violators the likes of Ratan Baid and Vivek Baid. While Defendants are understandably frustrated by Plaintiff's efficacy, Plaintiff is doing exactly what Congress intended — enforcing the law. See *Mey v. Venture Data, LLC*, 245 F.Supp.3d 771, 784 (N.D.W.Va., 2017). See, also, *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network*, Inc., 401 F.3d 876, 881 (8th Cir. 2005) (recognizing that private right of action under TCPA demonstrates Congressional intent to incentivize aggrieved parties to act as "private attorneys

general").

Next, Defendants argue that Plaintiff "obscured his phone number in his complaint". [ECF No. 15, PageID.65], and then Defendants publish an unredacted version of Plaintiff's telephone number for the whole World to see.  A person's telephone number is deemed "personally identifiable information."  See, *e.g.*, *Michigan Federation of Teachers & School Related Personnel, AFT, AFL-CIO v. University of Michigan*, 753 N.W.2d 28, 40, 481 Mich. 657, 676 (Mich., 2008) (holding that home addresses and telephone numbers reveal embarrassing, intimate, private, or confidential details about those individuals).  The potential abuses of an individual's identifying information, including his home address and telephone number, are legion.  *Id.*, 481 Mich. at 676.  Some people do not want their information added... seeking to avoid the inevitable harassing telephone calls of telemarketers. *Id.*

Plaintiff certainly does not appreciate the fact that Defendants have now publically published Plaintiff's telephone number so that Plaintiff may be furhter harassed by telemarketers and other scammers like the Defendants.

Defendants also recite to a myriad of inaccurate information to argue that Plaintiff's telephone number is a business number. [ECF No. 15, PageID.66].  Defendants' information is ancient history.  For example, Plaintiff is no longer

affiliated with Adrian & Blissfield Rail Road Company ("ADBF"), having resigned from his employment as President and Chief Executive Officer of ADBF on August 8, 2021.  The building located at 38235 North Executive Drive, Westland, Michigan was sold in April 2023.  Given that, previously, Plaintiff received many *personal* fax messages on the facsimile machine located at his office, when the Westland office building was vacated, the facsimile telephone number was relocated to Plaintiff's residence and now connects to Plaintiff's *personal* facsimile machine located at his residence.  The telephone service for the subject telephone number is subscribed in Plaintiff's name, and Plaintiff, personally, pays the telephone bill for the subject telephone number.  Certainly, this qualified as "residential" telephone service.

Contrary to Defendants' assertions, the telephone service is <u>not</u> provided by Bandwidth.com. [ECF No. 15,PageID.67; ECF 1507, PageID.106-107].  Further, and again contrary to Defendants' unsubstantiated assertion, Plaintiff's telephone number is one for which the Plaintiff is charged for the call on both a per call and per minute basis. [ECF No. 1, PageID.9, ¶ 34].  The TCPA proscribes that "[i]t shall be unlawful for any person... to make any call... using any automatic telephone dialing system... to any telephone number assigned to... any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1) (A)(iii).  This proscription is applicable regardless of whether the telephone number is "residential" or "business."

11

Defendant Vivek is a notorious telemarketing fraudster who has previously been prosecuted by the Federal Trade Commission, including being assessed an eye-opening $25 Million judgment for running a phony mortgage relief scam. *See* Stipulated Final Order for Permanent Injunction and Settlement of Claims entered in the matter of *Federal Trade Commission v. A to Z Marketing, Inc.*, *et al.*, Case No. SACV13-919 DOC (RNBx) (C.D. Cal., Nov. 13, 2014), attached hereto as EXHIBIT A.

## II.   LEGAL STANDARD

In assessing a motion to dismiss under Rule 12(b)(6), this court construes the complaint in the light most favorable to the plaintiff, accepts the plaintiff's factual allegations as true, and determines whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation and citation omitted); *Inge v. Rock Financial Corp.*, 281 F.3d 613, 619 (6th Cir.2002). A plaintiff's complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In analyzing a 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Taylor*

*v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). However, the court does not have to accept as true "unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). The burden of demonstrating that the complaint fails to adequately state a claim falls on the defendant. *Taylor*, 922 F.3d at 331. However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir. 2015).

## III.   ARGUMENT

### A.   Defendants failed to serve their Motion upon Plaintiff; their Motion should be denied.

Fed. R. Civ. P. 5(a)(1)(D) promulgates: "... Unless these rules provide otherwise, each of the following papers must be served on every party:... a written motion, except one that may be heard ex parte...."

Defendants failed to serve their Motion upon Plaintiff. Although Defendant's Motion contains a certificate of service signed by Defendants' counsel certifying that he mailed a copy of the Motion to Plaintiff at P.O. Box 85547, Westland, MI 48185-

0547. [ECF No. 15, PageID.81].  However, that address is <u>not</u> the mailing address for

Plaintiff which appears on this Court's case docket or any of papers filed by Plaintiff

in this matter.

Fed. R. Civ. P. 5(b)(2) promulgates:

"(2) Service in General. A paper is served under this rule by:

(A) handing it to the person;

(B) leaving it:

(i) at the person's office with a clerk or other person in charge or, if no one is in charge, in a conspicuous place in the office; or

(ii) if the person has no office or the office is closed, at the person's dwelling or usual place of abode with someone of suitable age and discretion who resides there;

(C) mailing it to the person's last known address--in which event service is complete upon mailing;

(D) leaving it with the court clerk if the person has no known address;

(E) sending it to a registered user by filing it with the court's electronic-filing system or sending it by other electronic means that the person consented to in writing--in either of which events service is complete upon filing or sending, but is not effective if the filer or sender learns that it did not reach the person to be served; or

(F) delivering it by any other means that the person consented to in writing--in which event service is complete

14

> when the person making service delivers it to the agency
> designated to make delivery."

As a *pro se* party, Plaintiff  is not an authorized filing user of the Court's

CM/ECF system.  Neither has Plaintiff has consented in writing to receiving filings

via other electronic or any other means.  Pursuant to the Electronic Filing Policies and

Procedures for the Eastern District of Michigan, Rule 9(e):

> "A party who is pro se and not a filing user... is entitled to
> a hard copy of any paper filed electronically. Service of
> such copy must be made according to the federal rules of
> procedure (civil and criminal) and local rules."

Given the fact that Plaintiff was not served with the motion, the motion should

be denied. See *Griffin v. Kyle*, No. 2:10-cv-664, 2011 WL 2885007, at *3 (S.D. Ohio

July 15, 2011) (finding that "it is not appropriate to rule on a motion which has not

been served on the opposing party" and recommending denying defendant's motion

for summary judgment), report and recommendation adopted by 2011 WL 3667401

(S.D. Ohio Aug. 22, 2011); *Pullins v. Eldridge*, No. 1:20-cv-01311, 2021 WL

3860298, at *1 (S.D. Ind. Aug. 27, 2021) (denying motions to dismiss where

defendants failed to serve motions on pro se plaintiff who was "not a registered user

on the Court's electronic filing system"); *Bey v. Ally Bank*, Civ. Action. No.

1:21-01079, 2021 WL 4891602, at *1–2 (W.D. Tenn. Sept. 28, 2021) (recommending

denying plaintiff's motion for entry of default where defendants electronically filed

motion to dismiss but failed to serve motion on pro se plaintiff who was not registered to receive service of electronic filings), report and recommendation adopted by 2021 WL 4888331 (W.D. Tenn. Oct. 19, 2021).

Anticipating that Defendants will argue that, since Plaintiff had knowledge of the Motion because Plaintiff learned of same while reviewing the Court's PACER system, Plaintiff could have obtained a copy of the Motion via the Court's PACER system and filed a response.  In fact, Plaintiff was forced to pay to download a copy of the Motion via PACER. But a pro se litigant's ability to access PACER and pay to download filings made in his or her case "does not replace the opposing party's duty to serve its motions" on that party in accordance with Federal Rule of Civil Procedure 5 and any applicable local rules. *McZeal v. Deutsche Bank Nat'l Tr. Co.*, No. A-16-CA-0430, 2016 WL 4154846, at *4 (W.D. Tex. Aug. 3, 2016). Finding otherwise would be the equivalent of imposing a tax on pro se parties to pursue their claims. *Robinson v. Serra Chevrolet Buick GMC of Nashville*, 2022 WL 3586210, at *5 (M.D.Tenn., 2022).

Defendants' Motion should be denied, and Defendants should be ordered to immediately reimburse Plaintiff the $3.00 costs[1] incurred in downloading the Motion

---

[1] While the costs may be *de minimis*, forcing the Defendants to pay those costs will serve as a deterrent for others.  Failing to order the Defendants to immediately pay those wrongfully incurred costs sends a message that the Local Rule has no teeth and may be disregarded as there will be no penalty.

via PACER.

### B.   Defendants failed to comply with Local Rule 7.1(a); their motion should be denied.

Defendants' counsel certifies compliance with E.D. Mich. Local Rule 7.1(a) nothing that "... on April 4, 2024, an associate with counsel for Defendants called Plaintiff and sent him an e-mail to explain the nature of, legal basis for, and the remedies sought in Defendants' motion to dismiss." [ECF No. 15, PageID.58]. According to Defendants' counsel, "Defendants did not receive a response..." [*Id.*] Defendants' counsel's representation to the Court that "Defendants did not receive a response" is a brazen **misrepresentation**.

In fact, Defendants' counsels' associate, Sophie Honeyman, did send an email to Plaintiff on April 4, 2024 at 11:47 A.M. Pacific Time (2:47 P.M. Eastern Time). See EXHIBIT B, attached hereto.  At that precise moment in time, Plaintiff was on board Delta Airlines flight 421, traveling from Detroit, Michigan to Las Vegas, Nevada, which flight landed at Las Vegas at approximately 2:18 P.M. Pacific Time.

On the morning of April 5, 2024, at 9:55 A.M. Eastern Time (6:55 A.M. Pacific Time), Plaintiff first received Ms. Honeyman's e-mail **and responded to her**, indicating that Plaintiff was traveling, but that Plaintiff would be available on Monday, April 8, 2024 at 10:00 A.M. Eastern Time to discuss Defendants' Motion. See EXHIBIT B.  Indeed, Plaintiff was surprised that Honeyman did not know that

Plaintiff was traveling on April 4, 2024, as Honeyman's co-counsel, Kelley Donnelly had a conversation with Plaintiff the day prior regarding another case, at which time Plaintiff informed Donnelly of his travel plans.

Surprisingly, in response to Plaintiff's April 5, 2024 e-mail to Honeyman, Plaintiff received an "auto responder" message stating that Sophie Honeyman was no longer with the Ice Miller law firm. See EXHIBIT C.

E.D. Mich. LR 7.1(a) expressly requires that "[t]he conference must be held sufficiently in advance of filing the motion to allow a good faith interactive exchange aimed at resolving the matter."   The commentary to E.D. Mich. LR 7.1(a) states:

> "LR 7.1(a) requires that a moving party conduct a meaningful and timely conference with other parties to explain the nature of the relief sought and the grounds for the motion, to seek concurrence, and to narrow the issues. The Court's strong preference is for conferences held in a manner that facilitates discussion and debate, such as in person, by video or by telephone. Sometimes, email exchanges may suffice if the motion is rudimentary and uncomplicated, or to document conversations. **But sending an email without engaging the other parties will not satisfy this rule.**" [Emphasis added.]

In the instant motion at bar, had Honeyman actually conferred with Plaintiff, as required by E.D. Mich. LR 7.1(a), Plaintiff would have discussed with Honeyman the incorrect facts and flawed legal arguments in their Motion, which may have resulted in conserving this Court's resources considering the Motion.

It is not up to the Court to expend its energies when the parties have not sufficiently expended their own. *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996). "Seeking concurrence from the opponent is a mandatory directive of the Local Rules of this District; inasmuch as defendant has failed to comply with this Local Rule prior to filing this motion, the Court must deny the relief that defendant seeks to obtain." *U.S. v. Ramesh*, 2009 WL 817549, at *6 (E.D.Mich.,2009). "The Local Rules, as well as the Federal Rules of Civil Procedure, are called 'rules,' not 'suggestions' or 'guidelines,' and as Justice (then Judge) Charles Levin stated in *People v. Farrar*, 36 Mich.App. 294, 299 193 N.W.2d 363, 366 (1971), 'Unless we enforce the rules we encourage their violation....' " *Bryce v. Commissioner of Social Security*, 2013 WL 12123666, at *1 (E.D. Mich. 2013).

Defendants' Motion should be denied for this reason alone.

### C. Whether Plaintiff's allegations sufficiently allege direct liability.

Defendants argue that they are not directly liable because they did not initiate the call. Defendants conveniently turn a blind eye to the fact that their business, ELD, is a partnership. [ECF No. 1, PageID.2, § 6]. The callers repeatedly identified themselves as being employed by ELD. [ECF No. 1, PageID.16, ¶ 65; PageID.18, ¶ 77; PageID.20, ¶ 93; PageID.22, ¶ 102; PageID.23-24, ¶ 112]. On at least two occasions, ELD attempted to charge Plaintiff's credit card account. [ECF No. 1,

19

PageID19-20, ¶ 87].  Partners are individually responsible for torts by the firm when acting within the general scope of its business, whether they personally participate therein or not.  *McIntyre v. Kavanaugh*, 242 U.S. 138, 139, 37 S.Ct. 38, 61 L.Ed. 205 (1916).  Partners are liable for torts inflicted upon third persons by other members of the partnership provided such torts occur in the course of partnership business. *McGrath v. Nolan*, 83 F.2d 746, 750 (9th Cir. 1936).  An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment. *Burlington Industries, Inc. v. Ellerth*, 118 S.Ct. 2257, 2266, 524 U.S. 742, 756 (1998).

### D.   Whether Plaintiff's allegations sufficiently allege vicarious liability.

Having established direct liability as a result of the defendants being partners in a partnership which engaged in the tortious conduct, we now address vicarious liability.  Subsequent to the Complaint being filed, Plaintiff was again contacted and solicited by an ELD employee, during which the ELD employee expressly identified Ratan and Vivek as being his "bosses."[2]  While partners have direct liability for the tortious misconduct of their employees, were Ratan and Vivek to come before this

---

[2] Plaintiff intends, once some rudimentary discovery has been completed, to seek leave to amend this Complaint in this matter to add, *inter alia*, this additional telemarketing call.  In the Complaint, Plaintiff also disclosed his intent, as discoverty progresses, to amend the Complaint to supplement the damages claims. [ECF No. 1, PageID.16, ¶ 62].

Court and argue that ELD is a corporation, Ratan and Vivek would have vicarious liability.  However, there is no corporation registered under the name "ELD Mandate".

As far as ratification, ELD attempted – twice – to process charges against Plaintiff's credit card account. [ECF No. 1, PageID.19-20, ¶ 17]. This establishes that "Quentin", who identified himself as being an ELD employee, had authority to market on behalf of ELD, and that ELD attempted to reap the benefits of the solicitation.

> **E.  Whether Count I should be dismissed because Dobronski was not charged for the calls he received and because Dobronski does not plausibly allege that Defendants called a wireless telephone line.**

Clearly Defendants are trying to obfuscate and confuse.  Nowhere in the Complaint did Plaintiff allege that Defendants called Plaintiff's wireless or cellular telephone line or that the telephone line 734-***-2323 is a cellular telephone service.

Defendants next assert – without benefit of any discovery and no factual support – that Plaintiff's telephone service provider is Bandwidth.com. [ECF No. 15, PageID.74].  Further, Defendants argue, that Plaintiff "was not charged for any of the calls he received and thus the calls would not implicate the TCPA." [*Id.*]

In the Complaint, Plaintiff alleges that Plaintiff's telephone number 734-***-2323 is a telephone line for which the called party "is charged for the call on both a per call and per minute basis." [ECF No. 1, PageID.9, ¶ 33].  The prevailing view is

that a plaintiff has a viable claim under § 227(b)(1)(A)(iii) provided that plaintiff incurs a charge per call. See, *e.g.*, *Perrong v. Victory Phones LLC*, 2021 WL 3007258, at *7 (E.D.Pa., 2021)*; Klein v. Commerce Energy, Inc.*, 256 F.Supp.3d 563, 581 (W.D.Pa., 2017); *Baemmert v. Credit One Bank, N.A.,* 271 F. Supp. 3d 1043, 1050 (W.D. Wis. 2017); *Jones v. Experian Info. Sols.*, No. CV 14-10218-GAO, 2016 WL 3945094, at *7 (D. Mass. July 19, 2016); *Tel. Sci. Corp. v. Trading Advantage, LLC*, No. 14 C 4369, 2015 WL 672266, at *1 (N.D. Ill. Feb. 17, 2015); *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 616-17 (D. Md. 2013), *on reconsideration in part*, 953 F. Supp. 2d 612 (D. Md. 2013), *and aff'd*, 586 F. App'x 103 (4th Cir. 2014), *as amended* (Oct. 17, 2014).

Defendants argue, again, that Plaintiff's telephone number "734-***-2323 is a fax number, not a cellular telephone service", and that this fact further justifies dismissal. [ECF No. 15, PageID.75]. Defendants again mislead the Court. Plaintiff's telephone number 734-***-2323 is attached to Plaintiff's personal fax machine. However, if an incoming call is received which is not from another fax machine, the telephone will ring, and Plaintiff can answer the call. Further, and again contrary to Defendants' unfounded allegations, no calls are forwarded from the 734-***-2323 telephone line to Plaintiff's cell phone. Plaintiff argues that "since the calls at issue were made to a fax machine running over VOIP, they did not violate 47 C.F.R. §

22

64.1200(a)(1)(iii)." [ECF No. 15, PageID.75].  However, Defendants deliberately gloss past the fact that Plaintiff's VOIP line fits squarely within the "... any service for which the called party is charged for the call" proscription within 47 C.F.R. § 64.1200(a)(1)(iii).

> **F.     Whether Counts II and VI should be dismissed because Dobronski's business fax number is not a residential telephone number and because business numbers cannot be registered on the National Do Not Call Registry.**

Once again, Defendants argue that the telephone number 734-***-2323 is a "business fax number directly affiliated with Dobronski's companies." [ECF No. 15, PageID.76]. Once again, Defendants are bringing up ancient history. As represented, *supra*, Plaintiff resigned as President and Chief Executive Officer of Adrian & Blissfield Rail Road Company in August 2021.  Railtech, LLC – although still in existence as a "shell" entity – ceased doing business nearly a decade ago.  Teletech, Inc. is winding down and wrapping up its affairs. The business office and warehouse located at 38235 North Executive Drive, in Westland, Michigan was sold in early 2023 after remaining empty for approximately one year.  Because Plaintiff formerly received personal faxes at the telephone number 734-***-2323, Plaintiff had that telephone number moved to Plaintiff's residence in Washtenaw County, Michigan and connected for Plaintiff's *personal* use.  The manner in which the telephone number was used in 2021 is irrelevant.  What is relevant is how the telephone number

is used today – and more focused, how the telephone number was utilized in December 2023 and afterwards when the illegal telemarketing calls were initiated to the telephone number by ELD.

Since early 2023, Plaintiff's telephone line 734-***-2323 terminates at Plaintiff's residence.  The telephone service is billed in Plaintiff's name, and paid for by Plaintiff, personally.  The FCC has defined "residential telephone subscriber" as a "subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(d). *Tsolumba v. SelectQuote Insurance Services*, 2023 WL 6146644, at *4 (N.D.Ohio, 2023).  Plaintiff knows of no law or regulation or any other authority that prohibits ordinary citizens from owning a personal fax machine, nor have Defendants cited to any such authority.

> **G.    Whether Counts III and V should be dismissed because the cited regulations apply only to residential numbers and because the cited regulations cover only calls made without implementing proper procedures.**

Once again, Defendants want to quibble that somehow Plaintiff is not a "residential telephone subscriber."  Plaintiff has addressed this issue, *supra*.

Contrary to Defendants' ramblings, Courts have found that there is a private right of action for violations of 47 C.F.R. § 64.1200(d)(1) (caller's failure to provide a do-not-call policy upon demand), and 47 C.F.R. § 64.1200(d)(6) (caller's failure to honor a do not call demand). In support of their argument, Defendants cite to

*Dobronski v. Family First Life, LLC, et al.*, 2024 WL 575858 (E.D. Mich. Jan. 19, 2024) ("FFL I") – but Defendants fail to note that *FFL I* is no longer good law as it was overruled by *Dobronski v. Family First Life, LLC, et al.*, 2024 WL 1342668 (E.D. Mich. Mar. 29, 2024) ("FFL II"). In *FFL II*, the Court determined that there is a private right of action for a violation of 47 C.F.R. § 64.1200(d)(1) and for a violation of 47 C.F.R. § 64.1200(d)(6).

Other courts have also determined that there is a private right of action under 47 C.F.R. § 64.1200(d)(1). See, *e.g.*, *Dobronski v. Selectquote Insurance Services*, 462 F.Supp.3d 784, 790 (E.D.Mich., 2020) ("Consumer had private right of action under TCPA on claim that insurance broker did not maintain do-not-call policy and make it available to him upon his demand."). Likewise, other courts have also determined that there is a private right of action under 47 C.F.R. 64.1200(d)(6). See, *e.g.*, *Charvat v. NMP, LLC*, 656 F.3d 440, 444 (6th Cir. 2011).

## H.   Whether Count IV should be dismissed because there is no private right of action under the cited regulation.

Lastly, Defendants assert that there is no private right of action under 47 C.F.R. 64.1200(a)(7)(i), citing to *FFL I* (which, Defendants fail to note was overruled by *FFL II*) which cited to *Dahdah v. Rocket Mortg., LLC.*, 2024 WL 5941730 (E.D. Mich,. Sept. 12, 2023). *Dahdah* is inapplicable here, as *Dahdah* addressed whether there was a private right of action under 47 C.F.R. § 64.1200(a)(7), not 47 C.F.R. §

64.1200(a)(7)(i).

Other courts have concluded that there is viable claim arising under 47 C.F.R. § 64.1200(a)(7)(i).  See *Leyse v. Bank of America*, 2016 WL 5928683, at *5 (D.NJ 2016) (holding that violation of 47 C.F.R. § 64.1200(a)(7)(i) states a claim under 47 U.S.C. § 227(b)(1)(B)); *Schweitzer v. Direct Energy, L.P.*, 2021 WL 5298989, at *2 (E.D. Pa. 2021) (denying defendant's motion for summary judgment to dismiss claim under 47 C.F.R. § 64.1200(a)(7)(i)).

## IV.        CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court enter its order that Defendants' Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule 12(b)(6) [ECF No. 15] be **denied.**

Respectfully submitted,

Date: April 30, 2024

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on **April 30, 2024**, I electronically filed the foregoing *Plaintiff's Notice of Change of Address* with the Clerk of the Court via the Court's Pro Se Document Upload utility, which will send notification of such filing to all counsel of record via the CM/ECF system.

_____

Mark W. Dobronski